# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**CHRIS WILLIAMS,**

        **Petitioner,**

    **v.**

**WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,**

      **Respondent.**

        **Case No. 1:20-cv-99**
        **JUDGE DOUGLAS R. COLE**
        **Magistrate Judge Merz**

## OPINION AND ORDER

This cause comes before the Court on Magistrate Judge Merz's January 15, 2021, Report and Recommendations ("R&R," Doc. 19). In his R&R, the Magistrate Judge[1] recommends that the Court dismiss Petitioner Chris Williams' Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Pet.," Doc. 8) with prejudice.

After the Magistrate Judge issued his initial R&R (Doc. 19), Williams filed Objections ("Objs.," Doc. 20) on February 8, 2021. In response, the Court issued an Order (Doc. 23) returning this matter to the Magistrate Judge pursuant to Fed. R. Civ. P. 72(b)(3) for further analysis. The Magistrate Judge then issued his Supplemental Report and Recommendations ("Suppl. R&R," Doc. 27) on March 1, 2021. Williams filed Objections to the Supplemental R&R ("Suppl. Objs.," Doc. 28) on March 22, 2021. That Supplemental R&R (with Williams' Objections to it) is also before the Court.

---

[1] This matter was originally assigned to Magistrate Judge Litkovitz, before being transferred to Magistrate Judge Merz on January 5, 2021. For the purposes of this Opinion, references to the "Magistrate Judge" refer to Magistrate Judge Merz, unless explicitly stated.

Finally, also before the Court are Williams' Objections ("Strike Objs.," Doc. 25) to the Magistrate Judge's Order ("Strike Order," Doc. 22) striking Williams' self-described Rule 44 Motion[2] and accompanying "Manifesto of Truth and Affidavit of Truth and Understanding" (Doc. 21) from the record.

For the reasons set forth more fully below, the Court **OVERRULES** Williams' Objections (Doc. 20) to the R&R (Doc. 19) and Objections (Doc. 28) to the Supplemental R&R (Doc. 27). Accordingly, the Court **ADOPTS** the R&R (Doc. 19) and Supplemental R&R (Doc. 27) and **DISMISSES** Williams' Habeas Petition (Doc. 8) **WITH PREJUDICE**. Because the Court finds that reasonable jurists would not disagree with this conclusion, the Court **DENIES** Williams a certificate of appealability. Further, the Court **CERTIFIES** that any appeal of this Opinion would be objectively frivolous.

Finally, the Court **OVERRULES** Williams' Objections (Doc. 25) to the Magistrate Judge's Order (Doc. 22) striking his Rule 44 Motion and "Manifesto of Truth and Affidavit of Truth and Understanding" (Doc. 21) from the record.

## PROCEDURAL HISTORY

### A.    State Court Proceedings

On April 10, 2015, a Hamilton County grand jury indicted Williams on two counts of rape of two minors under the age of ten in violation of Ohio Revised Code

---

[2] Fed R. Civ P. 44 provides the rules for proving an official record in civil proceedings. Because Williams' Motion here does not appear to relate to any official records, the Court is uncertain why he describes it as a "Rule 44 Motion." Nonetheless, for the sake of consistency, the Court will describe this docket entry as the "Rule 44 Motion" in this Opinion.

§ 2907.02(A)(1)(B). (Indictment, Doc. 14, #103–04[3]). Both before and during Williams' trial, the prosecution offered Williams an *Alford* plea deal whereby he would have received a six-year prison sentence. (Ltr. from R. Feil, Doc. 14, #355; Unsigned Plea Deal, Doc. 14, #358). Williams rejected the plea deal, and the jury convicted him. (Ltr. From R. Feil, Doc. 14, #355). The trial court entered judgment on March 11, 2016, and Williams was sentenced to two consecutive life terms in prison. (Notice of App., Doc. 14, #320).

After Williams' conviction, he appealed to Ohio's First District Court of Appeals, which affirmed the lower court's ruling on December 8, 2017. (R&R, Doc. 19, #630). Williams failed to timely appeal to the Ohio Supreme Court, and on April 25, 2018, the Ohio Supreme Court denied his application to file a delayed appeal. (Order Denying Mot. for Delayed App., Doc. 14, #267).

On February 20, 2018, and March 1, 2018, respectively, Williams also filed two applications to reopen his direct appeal under Ohio R. App. P. 26(B), alleging ineffective assistance of appellate counsel. (First Appl. to Reopen App., Doc. 14, #275; Second Appl. to Reopen App., Doc. 14, #279). The First District Court of Appeals denied the applications on October 16, 2018 (Order Denying Appl. to Reopen App., Doc. 14, #290), and the Supreme Court of Ohio declined jurisdiction on February 6, 2019 (Order Denying Jurisdiction, Doc. 14, #319).

Williams also attempted to obtain further relief at the trial court level. He filed his first petition for post-conviction relief on September 6, 2017. (First Pet. for Post-

---

[3] Refers to PAGEID #.

Conviction Relief, Doc. 14, #320). The court denied that petition on September 12, 2017 (Order Denying First Pet. for Post-Conviction Relief, Doc. 14, #342), and Williams did not appeal. Williams filed a second petition for post-conviction relief on December 23, 2019 (Second Pet. for Post-Conviction Relief, Doc. 14, #345), which remained pending at the time the Return of Writ in this case was filed. (*See* R&R, Doc. 19, #630).

### B. Williams' Habeas Petition

Williams initiated the instant habeas proceedings on February 6, 2020. (Doc. 1). In his Petition, Williams pleads four grounds for relief. (Doc. 8). The first ground asserts a claim for ineffective assistance of trial counsel. (*Id.* at #65). Specifically, Williams states in his Petition that he and his trial counsel, Richard Feil, discovered that Trent Elliot Tharps, "the live[-]in boyfriend of [the] alleged victims['] mother," "was a convicted sex offender with child victims." (*Id.*). Williams states that Feil "promise[d Williams] and his family that he would call [Tharps] to the stand and implement an alternative suspect defense," and Williams agreed to proceed to trial based on this promise. (*Id.*). However, when the time came, Feil never called Tharps. (*Id.*). Because Feil "usurped" the defense upon which Williams made the decision to proceed to trial, Williams argues that Feil's counsel was ineffective. (*Id.*).

Williams' second ground for relief argues that the trial court violated the Sixth Amendment's Confrontation Clause by "allow[ing] the jurors to view testimonial taped interviews of" the child victims. (*Id.* at #67). In these interviews, the child victims state that Williams made sexual contact with them. (*Id.*). While Williams

4

states that the interviews were nominally recorded for "medical treatment," their actual purpose was to "collect evidence [for] trial." (*Id.*). Because the interviews were thus testimonial in nature, Williams argues they should not have been admitted. (*Id.*).

Williams' third ground for relief retreads the same arguments as his first claim, arguing that his trial attorney committed "fraud upon the court" by "fail[ing] to interview [Tharps] for [his] defense even though he made legal assurances to do so." (*Id.* at #68).

Finally, Williams brings another ineffective assistance of counsel claim, arguing that Feil "was incompetent for not fully informing [him] of his inability to call key witnesses before trial." (*Id.* at #70). Williams argues that "if defense counsel [had] informed him that key witnesses would not be available to testify," he would have chosen to accept the prosecution's plea deal, rather than choosing to proceed to trial. (*Id.*).

## C.    The R&R's Analysis

After Williams filed his Petition, the Magistrate Judge issued the R&R, recommending that the Court dismiss each of Williams' claims as barred under the procedural default doctrine. (R&R, Doc. 19). As the Supreme Court has explained, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). To

determine whether a habeas petitioner's claim is barred by the procedural default doctrine, courts employ a four-part test:

> [f]irst, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must decide whether the state courts actually enforced the state procedural sanction. Third, the court must decide whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. Fourth, once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was 'cause' for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Smith v. Warden,* 780 F. App'x 208, 218–19 (6th Cir. 2019) (quoting *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986)) (internal modifications omitted).

The R&R rejects Williams' first claim—ineffective assistance of counsel based on Feil's failure to call Tharps as a witness—as procedurally defaulted for three reasons. First, Williams "did not raise [the claim] on direct appeal." (Suppl. R&R, Doc. 27, #674–75 (citing R&R, Doc. 19, #631–35)). Second, although Williams had raised this first claim as an underlying issue in his two Ohio R. App. P. 26(B) Applications for reopening his appeal, the R&R concludes that this "did not preserve [the ineffective assistance of trial counsel claim] for merits review." (*Id.*). And third, although Williams "claimed ineffective assistance of trial counsel in his first petition for post-conviction relief, … [he] did not appeal from the denial of that petition." (*Id.*). The R&R concludes that each of these means that Williams' first claim is procedurally defaulted under Ohio law. (*Id.*).

The R&R also rejects Williams' second claim—violation of the confrontation clause based on the admission of the recorded interview with the victims—finding that Williams defaulted this claim by failing to appeal to the Supreme Court of Ohio on direct appeal. (R&R, Doc. 19, #637–38).

The R&R concludes that Williams' third ground for relief—ineffective assistance of counsel for failure to interview Tharps—"repleads Ground One." (Suppl. R&R, Doc. 27, #675 (citing R&R, Doc. 19, #638)). Accordingly, the R&R recommends that the third ground for relief be dismissed for the same reasons it recommends dismissing the first ground. (*Id.*).

Finally, the R&R rejects Williams' fourth ground for relief—ineffective assistance of counsel based on Feil's "failure to advise Williams that certain key witnesses could not be called to testify." (*Id.*). Because this claim could have been raised in Williams' first petition for post-conviction relief and was not, the R&R concludes that the procedural default doctrine bars it, as well. (*Id.* (citing R&R, Doc. 19, #639)).

## D. Williams' Objections to the R&R

After the Magistrate Judge issued his R&R, Williams filed his initial Objections. There, he raises four arguments against the Magistrate Judge's analysis in the R&R. First, Williams objects to portions of the R&R where the Magistrate Judge characterizes him as a "pro se" litigant. (Objs., Doc. 20, #641). Second, although Williams waives his second and fourth claims for relief, (*id.* at #648), he argues that good cause exists to excuse any alleged procedural default as to the first and third

7

claims. (*Id.* at #642). In the alternative, should the Court decline to excuse his procedural default as to the first and third claims, Williams asks that the Court stay these proceedings to allow him to return to state court to exhaust them. (*Id.* at #649). Third, Williams argues that the Hamilton County Court of Common Pleas could not convict him because it is "not a Constitutional Court recognized by name or definite description in the Constitution." (*Id.* at #647). Fourth, Williams asserts that his Indictment was invalid because it was not supported by an affidavit. (*Id.* at #641).

## E.   The Supplemental R&R

After Williams filed his Objections to the R&R, the undersigned then returned this matter to the Magistrate Judge for further analysis. (Order, Doc. 23). The Magistrate Judge subsequently issued a Supplemental R&R, where he rejects each of the arguments in Williams' Objections. (Doc. 27). First, the Magistrate Judge expresses some confusion as to Williams' argument that he is not "pro se"—as "pro se" simply means that a litigant is not represented by counsel (which Williams is not). (*Id.* at #675–76). Second, the Magistrate Judge finds that Williams has failed to demonstrate good cause excusing his procedural default as to the first and third claims—and in any event, those claims fail on the merits. (*Id.* at #676–78). Third, the Magistrate Judge rejects—and struggles to discern the meaning of—Williams' argument that the Hamilton County Court of Common Pleas lacked the constitutional authority to convict him. (*Id.* at #678). Fourth, because Williams' Indictment included a grand jury true bill finding probable cause, the Magistrate

Judge rejects Williams' argument that his Indictment was invalid for lack of an affidavit. (*Id.* at #676).

## F.    Williams' Objections to the Supplemental R&R

After the Magistrate Judge issued his Supplemental R&R, Williams responded by filing an additional round of Objections. (Doc. 28). There, Williams first reiterates his argument that he is not "pro se." (*Id.* at #683–85). Second, Williams contends that his alleged procedural default on his first and third claims should be excused, and requests discovery to give him the opportunity to develop this argument at further length. (*Id.* at #680). In the alternative, he requests a stay. (*Id.* at #681). Third, Williams raises an additional claim for relief related to an alleged *Brady* violation based on newly discovered evidence. (*Id.* at #689). Williams does not respond, however, to the portions of the Supplemental R&R where the Magistrate Judge rejects his contention that the Hamilton County Court of Common Pleas lacked the constitutional authority to convict him or that his Indictment was invalid.

## LEGAL STANDARD

Under Fed. R. Civ. P. 72(b)(3), district courts review an R&R de novo after a party files a timely objection. This review, however, applies only to "any portion to which a proper objection was made." *Richards v. Colvin*, No. 2:12-cv-748, 2013 WL 5487045, at *1 (S.D. Ohio Sept. 30, 2013). In response to such an objection, "[t]he district court 'may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.'" *Id.* (quoting Fed. R. Civ. P. 72(b)(3)). By contrast, if a party makes only a general

objection, that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Boyd v. United States*, No. 1:16-cv-802, 2017 WL 680634, at *1 (S.D. Ohio Feb. 21, 2017). That is, a litigant must identify each issue in the R&R to which he or she objects with sufficient clarity that the Court can identify it, or else that issue is deemed waived. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That being said, here, as noted, the petitioner is proceeding pro se. A pro se litigant's pleadings are to be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). At the same time, pro se litigants must still comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## WILLIAMS' OBJECTIONS TO THE R&R AND SUPPLEMENTAL R&R

Having reviewed Williams' Objections to the R&R and Objections to the Supplemental R&R, it appears that Williams is raising five separate arguments against the Magistrate Judge's recommendations. First, Williams objects to being characterized as "pro se." Second, while waiving his second and fourth claims for relief, Williams maintains that his first and third claims are meritorious and that the Court should excuse any alleged procedural default. Third, Williams raises a new *Brady* claim based on newly discovered evidence. Fourth, Williams argues that the

Hamilton County Court of Common Pleas lacked the constitutional authority to convict him. Fifth, Williams asserts that his Indictment was invalid.

For the reasons stated more fully below, the Court finds each of the five arguments unavailing and, accordingly, **OVERRULES** Williams' Objections to the R&R and Objections to the Supplemental R&R.

## A. Williams Is A Pro Se Litigant.

In his initial R&R, the Magistrate Judge begins by noting that Williams brings his habeas petition pro se. (R&R, Doc. 19, #629). In his Objections to the R&R, Williams states that his "first [ob]jection is that that of this claim being brought 'pro se.' This is to remove all ambiguity and to clearly reveal the custom of treating the People as Business Trusts." (Doc. 20, #641). The Magistrate Judge responds in the Supplemental R&R, explaining that "pro se" means that Williams is "not represented by an attorney, but is acting on his own. The Court recognizes no 'custom of treating the People as Business Trusts,' and in fact does not understand what that term means in this context." (Doc. 27, #676). In his Objections to the Supplemental R&R, Williams reiterates his argument that he is not "pro se," (Doc. 28, #683–85), but is rather an "individual human person." (*Id.* at #690).

Like the Magistrate Judge, the Court does not follow the distinction Williams is attempting to make here—as "pro se" simply means that Williams is representing himself, rather than being represented by an attorney. To the extent Williams objects that "pro se" has some different meaning, the Court overrules that objection.

**B.** **Williams Waives His Second And Fourth Ground For Relief.**

In his Objections to the R&R, Williams waives his second and fourth grounds for relief. With regard to the second claim—violation of the Confrontation Clause—Williams states that "[he] wishes to no[] longer discuss elements that it is obviously irrelevant to the fact he did not rape [the victims]." (Objs., Doc 20, #648). As best the Court can discern, this appears to signal Williams' intent to waive his second ground for relief. Even if that is not Williams' intent, he makes no effort in either his Objections to the R&R or Objections to the Supplemental R&R to respond to the Magistrate Judge's conclusion that his second claim for relief is barred under the procedural default doctrine. Because the Magistrate Judge's conclusion with respect to the second ground for relief is essentially unobjected, and as the Court sees no clear error in the R&R's analysis, the Court **DISMISSES** Williams' second ground for relief.

Williams also waives his fourth ground for relief—ineffective assistance of counsel based on Feil's failure to advise that certain key witnesses could not be called to testify—in his Objections to the R&R. There, Williams states:

> Ground Four is clearly before this court for we cannot allow this chicanery to fall upon the inhabitants and our posterity, for once the public learns of this act by Richard D. Feil III (which they will soon) it shall violate the confidence that is already under attack in this nation. Petitioner prays for restoration wherefor he cries "Restore me" for the neglect and derelict of Ohio through its agents and reserves his rights pursuant to the herein after [sic] affidavit of truth and verity.

(*Id.*). As with his second claim, Williams' argument here is too vague for the Court to discern any specific objection to the R&R. Thus, the R&R is effectively unobjected.

Because the Court finds no clear error in the Magistrate Judge's analysis, the Court **DISMISSES** Williams' fourth ground for relief. *See Miller*, 50 F.3d at 380.

## C. The Court Denies Williams' First And Third Grounds For Relief.

That leaves Williams' first and third grounds for relief from his habeas petition. In the R&R, the Magistrate Judge concludes that these two grounds for relief are effectively one-and-the-same, as they are both ineffective assistance of counsel claims based on Feil's failure to develop the case against Tharps. (Doc. 19, #639). Williams does not object to this conclusion in his Objections to the R&R or Objections to the Supplemental R&R. (*See* Doc. 20; Doc. 28). Thus, for the purposes of this Opinion, the Court will address Williams' first and third grounds for relief jointly. For the sake of brevity, the Court will generally refer to this as the first ground for relief.

In his initial R&R, the Magistrate Judge concludes that Williams' first ground for relief is barred by the procedural default doctrine because (1) Williams failed to raise the claim on direct appeal; (2) Williams failed to appeal when the claim was rejected in his first petition for post-conviction relief; and (3) although Williams had raised the claim as an underlying issue in his two Ohio R. App. P. 26(B) applications for ineffective assistance of appellate counsel, doing so was insufficient to preserve the underlying ineffective assistance of trial counsel claim for merits review. (Suppl. R&R, Doc. 27, #674–75).

In his Objections to the R&R and Objections to the Supplemental R&R, Williams raises two principal arguments against the R&R. First, Williams argues

that his procedural default should be excused because he never received notice that his first petition for post-conviction relief was denied—and thus the Court should evaluate his first ground for relief on the merits. (Objs., Doc. 20, #642). Second, in the alternative, William requests that the Court issue a stay to provide him an opportunity to exhaust his claim through his currently-pending second petition for post-conviction relief. (*Id.* at #649). The Court addresses each of these arguments in turn.

### 1.    *Williams' Procedural Default Is Not Excused.*

First, Williams argues the Court should excuse his procedural default on his first claim because "the Hamilton County Clerk did not send [him] a notice that [his] first petition to vacate the sentence was denied." (*Id.* at #642). Because he never received notice, Williams states that he was deprived of the opportunity to appeal the denial of his first petition for post-conviction relief. Accordingly, Williams argues that the burden now rests with the state to provide proof "that the proper notice was mailed off[,] or it will be an admission that it in fact was not." (*Id.*).

In his Supplemental R&R, the Magistrate Judge rejects this argument. As he explains, "[t]he State Court Record shows the [denial of the first petition for post-conviction relief] was filed September 12, 2017 …. We are required by Supreme Court precedent to presume the regularity of trial court proceedings. *Walker v. Johnston,* 312 U.S. 275 (1941). It is quite easy to claim, many years after the fact, that the Clerk of Courts did not do her job, but this Court must presume she did unless and until [Williams] proves otherwise." (Suppl. R&R, Doc. 27, #676).

14

In his Objections to the Supplemental R&R, Williams asks this Court to compel Ohio's state prison administrators to produce the "institutional legal log" of mail received by the two institutions where he was previously incarcerated. (Doc. 28, #680). This discovery, he argues, will allow him to show that the Hamilton County Clerk never sent him a copy of the denial of his first petition for post-conviction relief. (*Id.* at #681).

There are several problems with this theory. As an initial matter, the Court notes that Williams, as a habeas petitioner, is not entitled to any discovery as a matter of course. As the Sixth Circuit has explained, "a district court should grant leave to conduct discovery in habeas corpus proceedings only where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is entitled to relief[.]" *Samatar v. Clarridge*, 225 F. App'x 366, 375 (6th Cir. 2007) (internal modifications and quotation marks omitted).

In this case, Williams did not file any motion for discovery, much less a motion for discovery demonstrating good cause. Had he done so, that motion would have been subject to initial review by the Magistrate Judge, who would have then issued an order granting or denying Williams' request for discovery. Only if that motion was denied would Williams then have had the opportunity to direct any objections to this Court for the undersigned's consideration. Rather than following those procedures, Williams directs his informal request for discovery directly to the undersigned for review in the first instance. For that reason, the Court must deny his request. *See*

*Tapke v. Brunsman,* 1:09-cv-77, 2010 WL 3522376 (S.D. Ohio Sept. 2, 2010) (rejecting a petitioner's request for discovery where the petitioner had made the request in his reply rather than by filing a motion for discovery).

Accordingly, because Williams has provided no evidence demonstrating that he never received notice of the denial of his first post-conviction petition, the Court agrees with the Magistrate Judge that Williams has failed to demonstrate good cause excusing his procedural default.

Moreover, even if Williams could demonstrate good cause, the Court also finds his ineffective assistance of counsel claim would fail on the merits.

In his initial R&R, the Magistrate Judge does not reach the merits of Williams' first claim for relief because he finds that this claim is procedurally defaulted. (*See* Doc. 19). Nonetheless, in his Objections to the R&R, Williams responds by reiterating many of his arguments that his claim is meritorious. In particular, Williams argues that his "trial attorney had made the promise to call Trent Elliot Tharps to the stand," and states that he submitted affidavits in his second petition for post-conviction relief from friends and relatives attesting to that promise. (Doc. 20, #644). The Supplemental R&R rejects the argument that calling Tharps would have led to a different outcome in Williams' trial—stating that, even if Tharps had been called, "[he] certainly would have been entitled to refuse to answer questions about raping these two victims under the Fifth Amendment." (Doc. 27, #677).

In his Objections to the Supplemental R&R, Williams argues that calling Tharps could have led to a different outcome at trial, because even if Tharps refused

16

to answer any questions, the physical resemblance he bears to Williams would itself have created reasonable doubt in the minds of jurors.[4] (Doc. 28, #688). Moreover, Williams also argues that he only agreed to go to trial based on Feil's representations that he would call Tharps to the stand—had Feil communicated that he would not do so, Williams indicates that he would have taken the prosecution's plea agreement. (*Id.* at #682–83, 689).

Under *Strickland,* "[t]o establish ineffective assistance of counsel, a defendant must show [1] deficient performance and [2] resulting prejudice." *Collier v. Lindsey*, No. 19-1989, 2020 WL 8678007, at *2 (6th Cir. Oct. 22, 2020) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To prevail on the former, the petitioner must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* (citation omitted). And to show the latter, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citation omitted). "The *Strickland* standard is highly deferential, and [s]urmounting *Strickland's* high bar is never an easy task." *Washington v. McQuiggin,* 529 F. App'x 766, 770 (6th Cir. 2013) (internal citations and quotation marks omitted).

Here, Williams' ineffective assistance of counsel claim rests on two separate, but closely related, arguments. First, Williams argues that, based on Feil's representations that he would call Tharps to the stand, Williams made the decision

---

[4] In particular, Williams notes that both he and Tharps are "200 plus pounds," have a "muscular build," the "same skin tone," and "similar facial features." (Suppl. Objs., Doc. 28, #688).

to proceed to trial rather than accept the prosecution's plea deal. (Suppl. Objs., Doc. 28, #689). Second, Williams argues that, had Feil called Tharps as a witness during trial, Williams would not have been convicted. (*Id.* at #688). The Court addresses each of these arguments in turn.

First, Williams argues that trial counsel was ineffective because Feil's misrepresentations that he would call Tharps to testify led Williams to reject the government's plea deal. (*Id.* at #689). To Williams' credit, he is correct that trial counsel may be deemed ineffective if he or she causes the defendant to improperly reject a plea agreement. However, to prevail on such a claim, the petitioner must still show that counsel's advice was objectively unreasonable and prejudicial. With regard to the prejudice inquiry, the Sixth Circuit has explained that

> [i]n the context of a rejected plea offer, [this] inquiry requires the defendant to "show that but for the ineffective advice of counsel there is a reasonable probability that [1] the plea offer would have been presented to the court (*i.e.* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed."

*Fritts v. United States,* No. 18-5336, 2020 U.S. App LEXIS 16187, at *4 (6th Cir. May 20, 2020) (quoting *Lafler v. Cooper,* 566 U.S. 156, 164 (2012)).

Here, Williams fails to satisfy the first requirement under *Fritts* because he cannot show that he would have accepted the plea offer even if Feil had adequately communicated his trial strategy. Indeed, Williams' own evidence indicates that Feil repeatedly tried to convince him to *accept* the plea offer, but Williams remained intent

18

on proceeding to trial. For example, an affidavit by Williams' uncle states that Feil "acted as if he was upset because [Williams] did not plead guilty or he was going to do life in prison." (Doc. 14, #472). Similarly, an affidavit by Williams' ex-girlfriend states that Feil was supposed to call Tharps, but "instead of doing what was planned[,] he kept pressuring Christopher to take a plea deal." (*Id.* at #468). This evidence indicates that Williams was resolutely opposed to accepting the plea deal—accordingly, even if Feil had communicated that he did not intend to call Tharps to testify, the Court is not persuaded that it would have changed Williams' decision to proceed to trial. *See Collier,* 2020 WL 8678007, at *2 ("[The petitioner's] bare assertion is insufficient to support his claim that he would have accepted the State's plea offer given that he steadfastly maintained his innocence throughout his criminal proceedings and that he forcefully denounced the prosecution and disparaged the victim."). For that reason, Williams' argument that he would have accepted the government's plea deal had Feil communicated his trial strategy must fail.

Relatedly, Williams argues that his trial counsel, Feil, was ineffective in failing to call Tharps to testify at trial. (Suppl. Objs., Doc. 28, #689). As with all *Strickland* claims, to prevail on this argument, Williams must show that Feil's conduct at trial was both unreasonable and prejudicial. *Collier*, 2020 WL 8678007, at *2. Both of these elements are particularly difficult to satisfy where a petitioner alleges that counsel was ineffective by virtue of failing to call a particular witness. With regard to reasonableness, "[t]he decision to call or not call certain witnesses is exactly the type of strategic decision that the courts expect attorneys to make," and accordingly, courts

19

afford that decision a significant degree of deference. *Floyd v. Haas,* No. 17-1295, 2017 WL 4182096, at \*4 (6th Cir. Sept. 13, 2017). It is also difficult for petitioners to demonstrate the requisite prejudice in these contexts, "because mere unsupported allegations about what testimony potential witnesses might have given are far too speculative." *Talley v. United States,* No. 1:00-cv-74, 2006 WL 3422997, at \*9 (E.D. Tenn. Nov. 27, 2006) (collecting cases).

Here, the Court need not reach the second "prejudicial" prong of the *Strickland* analysis, because Williams' claim fails on the first step: reasonableness. At the outset, the Court finds that Williams errs in suggesting that Feil failed to develop the case against Tharps at trial as part of an "alternative suspect defense." (Suppl. Objs., Doc. 28, #688). Indeed, in his Objections to the Supplemental R&R, Williams himself notes that, at trial, the mother of the victims offered "testimony admi[t]ting to dating [Tharps] and allowing him around the alleged victims knowing he was a child pred[a]tor." (*Id.*). Given that Feil *did* present an "alternative suspect defense," Williams must show that *how* Feil presented it—i.e., through the testimony of the victims' mother, rather than by calling Tharps himself to the stand—was unreasonable. On that front, while Williams may be correct that the physical resemblance he bears to Tharps might have aided his case, there are also "obvious strategic reasons not to call [a witness] who would have been hostile to the defense." *Wilburn v. Bauman*, 2:10-cv-14596, 2015 WL 1345255, at \*6 (E.D. Mich. Mar. 25, 2015). In choosing not to call Tharps, Feil made exactly "the kind of tactical choice *Strickland* warns against second-guessing." *Id.* Accordingly, because Williams has

failed to rebut the "presumption of reasonableness accorded counsel's actions," *Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010), his ineffective assistance of counsel claim based on the failure to call Tharps as a witness must fail.

### 2. *The Court Denies Williams' Request For A Stay.*

In the alternative, Williams also requests that the Court grant him a stay to allow him to return to state court to pursue his second petition for post-conviction relief. (Objs., Doc. 20, #649).

Williams has requested a stay multiple times during these habeas proceedings. Williams first made this request in his original Habeas Petition (Doc. 8, #65)—a request Magistrate Judge Litkovitz implicitly denied when she ordered an answer and reply. (R&R, Doc. 19, #639). Because Williams did not object when Magistrate Judge Litkovitz denied the request and did not raise the issue in his Reply, the initial R&R concludes that Williams forfeited the request to stay these proceedings. (*Id.*). In his Objections, however, Williams returns to the issue of a stay—stating that he "respectfully recommends and requests a stay and abeyance with an order to the sentencing court to rule on the merits of the second [petition for post-conviction relief.]" (Doc. 20, #649). Williams repeats this request in his Objections to the Supplemental R&R.[5] (Suppl. Objs., Doc. 28, #681).

---

[5] In his Objections to the Supplemental R&R, Williams also adds a second basis for the stay. He asks that the Court "grant a stay for new evidence [that] has been discovered regarding the [prosecution] not having all the essential elements to formally bring charges as presented to the Grand Jury for the [o]riginal [c]harges of [r]ape"—a claim Williams presumably seeks an opportunity to exhaust in state court. (Doc. 28, #680). Because Williams attempts to raise this basis for a stay for the first time in his Objections to the Supplemental R&R, the Court rejects it. *Peterson v. Burris*, No. 17–1291, 2017 WL 8289655, at *3 (6th Cir. Dec. 8, 2017).

There are two possible interpretations of the request for a stay in Williams' Objections to R&R and Objections to the Supplemental R&R. First, Williams could be objecting to the R&R's conclusion that he forfeited his Petition's initial request for a stay. If that is Williams' argument, the Court rejects it—agreeing with the R&R that Williams forfeited his request for a stay by failing to object when Magistrate Judge Litkovitz implicitly denied the request and by failing to raise the issue in his Reply. *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to [a Magistrate Judge's order on a non-dispositive matter] within 14 days after being served with a copy.").

The second possible interpretation of Williams' argument is that he is instead making a *new* request for a stay, distinct from the initial request in his original Habeas Petition. If that is indeed what Williams is requesting here, the Court must reject it, as "issues raised for the first time in objections to [a] magistrate judge's report and recommendation are deemed waived." *Peterson,* 2017 WL 8289655, at *3.

Even if the Court could consider Williams' request on the merits, the Court would have no choice but to deny the stay. In a § 2254 habeas case, "[a] stay and abeyance should be issued 'only in limited circumstances' where 'the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that he engaged in intentionally dilatory litigation tactics.'" *Bumpas v. Tennessee,* No. 21-5507, 2022 U.S. App. LEXIS 3284, at *4 (6th Cir. Feb. 4, 2022) (quoting *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005)). Moreover, "[i]t is [the petitioner's] burden to make this showing." *Id.*

Here, the Court rejects Williams' request for a stay because his unexhausted first claim for relief cannot succeed in the Ohio state court. Although Williams argues that he may pursue this claim through his second petition for post-conviction relief, as the Magistrate Judge correctly explained in his initial R&R, these efforts are almost certainly futile. "[Williams'] ineffective assistance of trial counsel claim was previously raised in [his] first petition to vacate and its second presentation is therefore barred by *res judicata*. Moreover, the second petition was untimely and the trial court [is] therefore barred by Ohio Revised Code § 2953.22 from exercising jurisdiction over it." (R&R, Doc. 19, #634–35). Accordingly, because Williams has failed to demonstrate that his claims are potentially meritorious, the Court declines to grant his request for a stay.

## D.    The Court Rejects Williams' *Brady* Claim.

Williams' Objections to the Supplemental R&R also raise a new ground for relief under *Brady v. Maryland,* 273 U.S. 83 (1963). As Williams explains, "there is newly discovered evidence regarding how the alleged victims chang[ed] th[eir] story [three] times[, which] was previously hidden by the prosecution. [Because] this [was] not … revealed upon [a] motion for discovery[, it] is a *Brady* violation and an obstruction of justice via concealment of evidence." (Suppl. Objs., Doc. 28, #689). This new ground for relief was not set forth in the habeas petition, and thus the Magistrate Judge had no opportunity to address it. Accordingly, it is not properly before the Court, and is overruled on those grounds. *See Biggs v. Coleman*, No. 5:11-cv-292, 2014 WL 185893, at *5 (N.D. Ohio Jan. 15, 2014) (finding that where a petition "assert[s]

23

new grounds for relief that were not set forth in the habeas petition, and, consequently, the magistrate judge had no opportunity to address them … [the] new grounds for relief are not properly before the Court") (collecting cases).

**E.    Williams Forfeits His Other Objections To The R&R By Failing To Address Them In His Objections to the Supplemental R&R.**

Finally, the Court turns briefly to other arguments that Williams raised in his Objections to the R&R, and that he forfeited in his Objections to the Supplemental R&R.

First, Williams argues in his Objections to the R&R that "child rape is punishable if one is in fact duly convicted in honor with the ultimate facts and the Constitutional Courts having true jurisdiction. [But, t]he Hamilton[] County Common Pleas Court is not a Constitutional Court recognized by name or definite description in the Constitution …." (Objs., Doc. 20, #647). The Supplemental R&R rejects this argument as "so far outside the mainstream of habeas corpus law that it is difficult for the Magistrate Judge to understand [it.]" (Doc. 27, #678). Because Williams does not respond to the Magistrate Judge's conclusions on this issue in his Objections to the Supplemental R&R, the Supplemental R&R is effectively unobjected. Seeing no clear error in the Magistrate Judge's analysis, the Court adopts his findings here.

Second, Williams also argues that there is no affidavit for an arrest warrant on the Indictment. (Objs., Doc. 20, #641). The Supplemental R&R rejects this argument, stating that "[t]he very first exhibit in the State Court Record is the grand jury true bill finding probable cause and on which the prosecutor requested a warrant

24

be issued. A grand jury finding of probable cause satisfies the Constitution as much as an affidavit." (Doc. 27, #676). Again, because Williams does not respond to the Supplemental R&R's conclusions on this point, the Court deems them unobjected. Seeing no clear error in the Supplemental R&R's analysis, the Court accordingly adopts its findings here.

### WILLIAMS' OBJECTIONS TO THE STRIKE ORDER

On February 8, 2021, Williams filed what he describes as a Fed. R. Civ. P. 44 Motion to add a document entitled a "Manifesto of Truth and Affidavit of Truth and Understanding" to the record. Williams' six page "Manifesto" is perhaps best described as a meditation on the Constitution and the Uniform Commercial Code. The day after he filed it, the Magistrate Judge issued a notation order striking the Motion and accompanying Manifesto, stating that their contents "have no intelligible relationship to the issues in this habeas corpus case." (Feb. 9, 2021, Notation Order, ECF No. 22).

Williams filed his Objections to the Magistrate Judge's Strike Order on February 26, 2021. (Doc. 25). Because the Magistrate Judge's Strike Order is non-dispositive, his decision "will be reversed only if it is 'clearly erroneous or is contrary to the law.'" *Heid v. Hooks,* No. 2:17-cv-650, 2020 WL 5201082, at *7 (S.D. Ohio Sept. 1, 2020) (quoting Fed. R. Civ. P. 72(a); 28 U.S.C § 636(b)(1)(A)). Under this standard, the Magistrate Judge's factual findings are reversed if they are "clearly erroneous," while his legal findings are reversed if they are "contrary to the law." *Id.*

In his Objections, Williams argues that the Motion and Manifesto serve "as constructive notice of [a] future civil suit and 'Express Color' claim soon and here after [sic] to come holding all act[o]rs accountable and liable for the atrocities done to [Williams]." (Strike Objs., Doc. 25, #668–69). The Court is not sure what this means, and to the extent Williams offers other arguments in his Objections, the Court does not follow them. Because Williams has offered no coherent arguments against the Strike Order, the Court finds the Order is effectively unobjected. Accordingly, the Court declines to reverse the Magistrate Judge's Strike Order. (Doc. 25).

## CONCLUSION

For the reasons set forth above, the Court **OVERRULES** Williams' Objections (Doc. 20) to the R&R (Doc. 19) and Objections (Doc. 28) to the Supplemental R&R (Doc. 27). Accordingly, the Court **ADOPTS** the R&R (Doc. 19) and Supplemental R&R (Doc. 27) and **DISMISSES** Williams' Habeas Petition (Doc. 8) **WITH PREJUDICE**. The Court **DIRECTS** the Clerk to **TERMINATE** this matter on the Court's docket. Because the Court finds that reasonable jurists would not disagree with this conclusion, the Court **DENIES** Williams a certificate of appealability. Further, the Court **CERTIFIES** that any appeal of this Opinion would be objectively frivolous and should not be permitted to proceed in forma pauperis.

Further, the Court **OVERRULES** Williams' Objections (Doc. 25) to the Magistrate Judge's Order (Doc. 22) striking his "Manifesto of Truth and Affidavit of Truth and Understanding" (Doc. 21) from the record.

**SO ORDERED.**


June 2, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**